**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| RODNEY SOWIZROL, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>Lumber Liquidators Inc., a Delaware corporation, Lumber Liquidators Leasing, LLC, a Delaware limited liability corporation, Lumber Liquidators Holding, Inc., a Delaware corporation, Lumber Liquidators Services, LLC, a Delaware limited liability corporation<br><br>Defendants. | Case Number: 15-2145<br><br>Judge:<br><br>Magistrate Judge: |

**COMPLAINT AT LAW**

Plaintiff, Rodney Sowizrol, individually and on behalf of all others similarly situated (the "Class", as more fully defined below), alleges against Defendant Lumber Liquidators Inc., Defendant Lumber Liquidators Leasing, LLC, Defendant Lumber Liquidators Holding, Inc., and Defendant Lumber Liquidators Services, LLC (collectively "Lumber Liquidators" or "Defendant") the following:

**INTRODUCTION**

1. This class action is brought by Plaintiff, individually, and on behalf of Class, defined herein Class, against Lumber Liquidators for damages and injunctive relief arising from

and relating to Plaintiff's purchase and installation of Lumber Liquidators' laminate wood flooring ("flooring").

2. Plaintiff alleges that Lumber Liquidators' devised and enacted a scheme involving the import of flooring into the United States, including Illinois, and that Lumber Liquidators falsely and deceptively labeled, marketed, warranted and sold Flooring that fails to comply with relevant and applicable formaldehyde standards, and in violation of the Illinois Consumer Fraud and Deceptive Practices Act.

3. Contrary to its representations, Lumber Liquidators manufactures, labels, markets warrants, distributes and sells Flooring which contains and emits excessive levels of formaldehyde, a known human carcinogen, well above the maximum limits set in accord with various government and industry standards. Defendants impermissibly conceal this information from consumers.

4. Defendants' conduct with respect to the flooring has caused Plaintiff and the other Class members to suffer financial damages. By failing to comply with the industry standards concerning formaldehyde levels, as well as the warranties supplied for the Flooring, Defendant has caused the flooring installed in Plaintiff's home to have significantly less value. As result of Defendant's acts or omissions, Plaintiff' property has a diminished value.

5. Had Plaintiff known the true and accurate composition of the subject flooring, and had Plaintiff known that the flooring product contained elevated levels of a toxin, namely, formaldehyde, Plaintiff would not have purchased Defendant's flooring, or would have paid a very significantly less amount, had Plaintiff known that the products contained excessive levels of formaldehyde.

6. Plaintiff asserts claims both individually, and on behalf of putative class members.

## PARTIES

7. Plaintiff, Rodney Sowizrol, is a resident of Chicago, Illinois who purchased laminate flooring from the Defendant during the Class Period, defined herein.

8.     Defendant Lumber Liquidators, Inc. is a Delaware corporation doing business in the State of Illinois and throughout the United States of America. Defendant's principal place of business is 3000 John Deere Road, Toano, Virginia 23618.

9.     Defendant, Lumber Liquidators Leasing, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

10.     Defendant, Lumber Liquidators Holding, Inc., is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23618.

11.     Defendant, Lumber Liquidators Services, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23618.

12.     Defendant designs, manufactures, markets, distributes and sells a variety of flooring, including laminate flooring. Defendant maintains a registered agent in Illinois, owns and leases properties throughout Illinois, and sells its products to consumers throughout the United States of America, including in Illinois.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) a member of the putative class, namely the Plaintiff, is a citizen of a State different from a defendant; and (3) the number of members of all proposed plaintiff classes in the aggregate is greater than 100.

14.     The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged herein occurred in the State of Illinois; Defendants have sufficient minimum contacts with Illinois, and have otherwise intentionally availed themselves of the markets in Illinois, through the promotion, marketing, distribution and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair

play and substantial justice.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3) because Plaintiff is domiciled in this District, a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

16.     Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth, herein.

17.     On and before October 28, 2013, Defendant designed, manufactured, marketed, distributed and sold laminate flooring. Defendant engaged in the design, manufacture, marketing, distribution and sale of laminate flooring in both the United States and China.

18.     On and before October 28, 2013, and at all relevant times, Defendant held itself out as "the largest specialty retailer of hardwood flooring in North America" with a "reputation for offering great value, superior service and a broad selection of high-quality hardwood flooring products."

19.     Defendant marketed, labeled, warranted, distributed and sold, during the Class Period, the subject toxic Flooring as being "compliant for Formaldehyde" and specifically in compliance with CARB regulations in the State of California. CARB is an acronym for the California Air Resources Board, an entity which promulgates safety standards relating to the emission of formaldehyde for products sold in California.

20.     Defendant sold Flooring labeled as CARB compliant outside of California. Indeed, 15 U.S.C. 2601 et. seq., Formaldehyde Standards for Composite Wood Products, is the federal law for formaldehyde, originally based on CARB standards.

21.     On or about October 28, 2013, Plaintiff purchased Flooring from Defendant that was packaged with a label specifying "CARB NO. SCS-CARB-000179 CALIFORNIA 93120

PHASE 2" and "Compliant for Formaldehyde." Plaintiff read the label and presumed the representation to be accurate and true.

22.     Thereafter, Plaintiff installed the Flooring in his home in Illinois. At no time was Plaintiff informed of the elevated and/or unsafe level of formaldehyde gas emitted from the Flooring.

23.     Despite its assurances to the public, upon which Defendant intended consumers to rely, and despite consumers' reliance on Defendant's assurances, Defendant knew that the Flooring contained a level of formaldehyde and emitted levels of formaldehyde gas which exceeded the standards promulgated in the Toxic Substances Contract Act, 15 U.S.C. 2601 et. seq. (Title VI – Formaldehyde Standards for Composite Wood Products), the CARB regulations in the State of California, as well as various industry standards and building codes.

24.     Formaldehyde is a known toxin, and formaldehyde gas can cause cancer, asthma, respiratory irritation, skin irritation, eye irritation, nausea and other ailments

25.     Formaldehyde is a toxic substance to which people may be exposed without knowing they are at risk.

26.     Defendant's sold to Plaintiff, and other members of the putative class, Flooring that poses great health risks, without disclosing the fact to consumers.

27.     Because the Flooring emits excessive formaldehyde levels, Defendant violated law and building codes applicable in Illinois and various industry standards, as well as Lumber Liquidators' express representations and warranties concerning formaldehyde content and compliance with standards applicable to the Flooring.

28.     Defendant was negligent in the design, manufacture, import, distribution, marketing and sale of Flooring with defects, deficiencies and unsafe characteristics that were contrary to Defendant's knowledge of various laws, codes, and standards that required compliance with minimum standards for formaldehyde emissions.

29.     Further, Defendant knowingly concealed the defects, deficiencies and unsafe characteristics of the Flooring.

30. Through its marketing, advertisements, website communications, labels and in-store sales tactics, Defendant promulgated false and misleading information for the purpose of increasing sales of the Flooring. Defendant continued its systematically false, misleading and deceptive conduct by failing to notify purchasers and/or homeowners of the Flooring's defects, and failing to provide relief.

31. Plaintiff and the putative Class Members did not receive the value for which they bargained and paid when the Flooring was purchased, and there exists a difference in value between the Flooring as marketed, labeled and warranted and the Flooring as it exists with a hazardous defect.

32. Plaintiff and the Class sustained damages as a result of Defendant's acts and omissions, and are entitled to a return of the full purchase price paid for the Flooring, compensation for removal of the Flooring, compensation for replacement flooring and other damages to be proven at trial.

**CLASS ACTION ALLEGATIONS**

33. Plaintiff bring this action as a class action, pursuant to FRCP 23, on behalf of the following class:

> All persons in the State of Illinois who, since March 10, 2011, purchased or acquired Defendant's Flooring.
>
> The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Judge to whom this case is assigned and the Judge's staff.

34. This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the Class is easily ascertainable.

35. Numerosity: Based upon publicly available sales data with respect to the product at issue, it is estimated that the Class numbers are in the thousands, and that joinder of all Class members is impracticable.

36. Commonality: This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to

recover. Questions of law and fact common to each Class member include:

    a.   Whether Lumber Liquidators' Flooring products emit unsafe levels of formaldehyde;

    b.   Whether Lumber Liquidators omitted and concealed material facts in its disclosures to Plaintiff and the other Class members regarding compliance and safety of its Flooring products;

    c.   Whether Defendants' unlawful, unfair and deceptive practices harmed Plaintiff and the Class;

    d.   Whether Lumber Liquidators breached its express or implied warranties to Plaintiff and the other Class members with respect to its Flooring products;

    e.   Whether Lumber Liquidators violated Illinois law, including pursuant to the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.;

    f.   Whether, as a result of Lumber Liquidators' conduct, Plaintiff and the other Class members have suffered damages; and if so, the appropriate measure of damages to which they are entitled;

    g.   Whether, as a result of Lumber Liquidators' conduct, Lumber Liquidators was unjustly enriched; and

    h.   Whether, as a result of Lumber Liquidators' misconduct, Plaintiff and the other Class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

    37.   Typicality: Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff received and purchased Defendants' Flooring during the Class Period.

Defendants' actions arise from the same set of facts concerning the same Flooring Product, Substantially Similar Product and Related Products. Plaintiff and each Class member sustained similar injuries arising out of Defendant's conduct in violation of Illinois law. The injuries of each member of the Class were caused directly by Defendant's conduct. In addition, the factual underpinning of Defendant's conduct is common to all Class members, and represents a common thread of conduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

38.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of either Class's members.  Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and Plaintiff's counsel are aware of their fiduciary responsibilities to the members of the Class and will diligently discharge those duties by seeking the maximum possible recovery for the Class.

39.     Superiority:   There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by each member of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of each Class member's rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class are not especially substantial, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.   Class

treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

40. The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

41. The prerequisites to maintaining a class action are met as questions of law or fact common to each Class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

42. Plaintiff and Plaintiff's counsel are unaware of any difficulties likely in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD & DECEPTIVE PRACTICES ACT

43. Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth, herein. .

44. At all relevant times, Defendant was in the business of distributing, marketing, and selling Flooring in Illinois.

45. Defendant was at all times relevant to this Complaint engaged in trade and commerce in the State of Illinois, including by its distributing, marketing, advertising, offering for sale and selling Flooring within the State of Illinois.

46. Section 2 of the Consumer Fraud Act prohibits unfair or deceptive practices,

stating in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.815 ILCS 505/2.

47. Section 2 of the "Uniform Deceptive Trade Practices Act" states in pertinent part:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
>
> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
>
> and
>
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

48. In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.

49. This Section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State. (Source: P.A. 92-16, eff. 6-28-01).

50. While engaged in trade or commerce, Defendant committed unfair and/or deceptive acts or practices against Plaintiff, declared unlawful under Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, by:

a. Representing to Plaintiffs, expressly and/or by implication, and with the intent

that Plaintiffs rely on such representations, that Defendant's Flooring was safe and compliant with pertinent applicable laws and industry standards when, in fact, it was not;

b.  Representing to Plaintiff, expressly and/or by implication, and with the intent that Plaintiff rely on such representations, that the Flooring was free of defects and hazardous or toxic characteristics;

c.  Holding out the Flooring as having a fair and full market value as a result of being free of defects, toxins, and other deficiencies when, in fact, the Flooring was defective and deficient, and either worthless or worth much less than the fair market value;

d.  Purposefully and systematically marketing, advertising and labeling Defendant's Flooring as safe, with Defendant's explicit and implicit misrepresentations in media, internet and packaging, despite Defendant's knowledge to the contrary;

e.  Unlawfully labeling the Flooring package to contain a product that was inconsistent with the characteristics of the actual product sold;

51.     Defendants' actions and representations, as set out above, were performed and/or communicated to Plaintiff, and members of the Class, with the intent that Plaintiff and the Class rely on said representations and acts, including representations made to induce Plaintiff to believe that the Flooring was safe and compliant with relevant laws, codes and industry standards, and Plaintiff and the Class relied on said actions and representations in purchasing and installing the Flooring, thereby incurring expenses.

52.     Plaintiff and the Class suffered actual and consequential damages due to Defendant's representations and unfair acts, including but not limited to financial damages, loss

of personal property, diminished value of property and attorney fees, incurred in connection with Plaintiff's, and the Class', reliance on Defendant's actions and representations.

53. Defendant's actions were done with reckless disregard for the rights, health and safety of Plaintiff, and the Class, thereby warranting substantial punitive damages.

54. Defendant's actions, set out above, directly and proximately caused damages to the Plaintiff, and the Class, as setforth herein.

## COUNT II

## NEGLIGENCE

55. Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth, herein.

56. Lumber Liquidators owed a duty to Plaintiff and to members of the Class to design, manufacture, import, distribute, market and sell flooring that was free of unsafe levels of formaldehyde so as to cause damage to Plaintiff's person and property.

57. Lumber Liquidators owed a duty to Plaintiff and to members of the Class to adequately test the Flooring so as to ensure it contained only safe levels of formaldehyde, compliant with laws and standards, specifically including such laws, codes and standards applicable in Illinois, for a reasonable period of use.

58. Lumber Liquidators failed to exercise ordinary and reasonable care in the design, manufacture, import, distribution, marketing and sale of the Flooring and, more specifically, in detecting and disclosing latent defects that result in dangerous and potentially life threatening levels of formaldehyde emissions, as well as diminished value to property.

59. Lumber Liquidators failed to exercise ordinary and reasonable care in the design, manufacture, import, distribution, marketing and sale of the Flooring, and breached the foregoing duties owed to Plaintiff and the Class, in one or more of the following acts or omissions:

a. Failing to design, manufacture, import, distribution, marketing and Flooring with adequate testing so as to ensure compliance with applicable laws, standards and building codes;

b. Failing to design, manufacture, import, distribution, marketing and sell Flooring with adequate testing for safe performance within a reasonable period of time;

c. Failing to ensure that the Flooring conformed to all applicable laws, standards and building codes;

d. Failing to adequately warn consumers of the unsafe levels of the toxin, formaldehyde, contained in the Flooring;

e. Concealing from consumer the true level of formaldehyde emissions in the Flooring, when Defendant knew, or should have known, that the Lumber Liquidators' Flooring was defective and not compliant with laws, building codes and industry standards.

60. Plaintiff and the Class Members have been damaged because Defendant's Flooring emits unsafe levels of formaldehyde gas and is not fit for its ordinary and marketed purpose.

61. As a direct and proximate cause of Defendant's negligence, Plaintiff and the Class Members have sustained damages of a pecuniary nature.

**COUNT III**

**STRICT LIABILITY**

62. Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth, herein.

63. Lumber Liquidators owed a duty to Plaintiff and to members of the Class to ensure that the aforesaid Flooring was not designed, manufactured, distributed, marketed and sold so as

to be in an unreasonably dangerous condition.

64. At the time the aforementioned Flooring left control of Defendant, and was sold to Plaintiff and the Class Members, the Flooring was in an unreasonably dangerous condition in one or more of the following respects:

a. The Flooring's construction and composition had not been subjected to adequate testing so as to detect unsafe levels of formaldehyde gas;

b. The Flooring was designed and manufactured in a manner so as to be non-compliant with applicable laws, standards and building codes;

c. The Flooring was designed, manufactured, imported, distributed, marketed and sold without having been adequately tested for safe performance;

d. The Flooring did not contain adequately warnings to consumers regarding the unsafe levels of the toxin, formaldehyde, contained in the Flooring;

e. The Flooring was designed, manufactured, imported, distributed, marketed and sold in a manner so as to conceal from consumers the true level of formaldehyde emissions in the Flooring, when Defendant knew, or should have known, that the Lumber Liquidators' Flooring was defective and not compliant with laws, building codes and industry standards;

f. was otherwise unreasonably dangerous.

65. Plaintiff and the Class Members have been damaged as a direct and proximate result of one or more of the aforementioned unreasonably dangerous conditions.

66. As a direct and proximate cause of Defendant's negligence, Plaintiff and the Class Members have sustained damages of a pecuniary nature.

**COUNT IV**

**UNJUST ENRICHMENT**

67. Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

68. Plaintiff and the Class members conferred a benefit on Defendant when they purchased the Flooring.

69. Lumber Liquidators has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Flooring, the retention of which under these circumstances is unjust and inequitable because Lumber Liquidators' Flooring is defective in design; defective in manufacturing; not fit for ordinary, intended and marketed use; and failed to conform with the marketing, warranties and labels disseminated by Lumber Liquidators, as well as the reasonable expectations of ordinary consumers, causing Plaintiff and the Class members to lose money as a result thereof.

70. Plaintiff and Class members suffered a monetary loss as a result of Defendant's acts and omissions, constituting unjust enrichment, because: (a) Plaintiff and the Class Members would not have purchased the Flooring on the same terms and for the same price if the true facts concerning the unsafe Flooring had been revealed to Plaintiff and the Class Members; (b) Plaintiff and the Class Members paid a price premium based upon a belief that the Flooring would be free from defects; and (c) the Flooring did not perform as promised.

71. Lumber Liquidators' retention of the benefit conferred upon them by Plaintiff and the Class Members is unjust and inequitable. Defendant must pay restitution to Plaintiff and the Class Members for it's unjust enrichment.

72. Plaintiff and the Class Members are entitled to restitution of, disgorgement of, and/or the imposition of the constructive trust upon, all profits, benefits, and other compensation obtained by the Defendant from their deceptive, misleading, and unlawful conduct.

**COUNT V**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

73. Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

74. At all relevant times, Defendant was a merchant engaged in the sale of Flooring in Illinois.

75. At all relevant times, Defendant did impliedly warrant that the Flooring was of merchantable quality and fit for the ordinary purposes pursuant to the provisions of the Uniform Commercial Code, 810 ILCS 5/2-313, 314 and 315, and further specifically claimed in its labeling of Flooring that:

a. the Flooring was "Compliant for Formaldehyde";
b. Defendant had a "reputation for offering great value, superior service and a broad selection of high-quality hardwood flooring product"
c. The Flooring was "safe."

76. On and before October 28, 2013, Defendant represented that the Flooring came with an implied warranty of merchantability and that the Flooring was reasonably fit for the general purpose for which it was sold.

77. In violation of the provisions of 810 ILCS 5/2-313, 314 and 315, Defendant breached the implied warranty of merchantability since the aforesaid Flooring was not of merchantable quality nor fit for the ordinary purposes for which such product is used, namely caused the Flooring to emit excess levels of Formaldehyde gas and rendered the Flooring unsafe for a home.

78. As a proximate result of the aforementioned breach of the implied warranty of merchantability, Plaintiff and Class Members sustained injuries of a pecuniary nature.

**COUNT VI**

**MAGNUSON-MOSS WARRANTY ACT**

79. Plaintiff, individually and on behalf of all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

80. Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

81. Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§

2301(4)-(5).

82. Lumber Liquidators Flooring purchased separate from the initial construction of a home constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

83. Defendant's express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free from defects and was in compliance with CARB formaldehyde standards and all other applicable laws and regulations, constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

84. Defendant breached the warranties by:

a. Manufacturing, selling and/or distributing Flooring that exceeds the CARB and Federal formaldehyde standards;

b. Designing, manufacturing, importing, distributing and selling Flooring that fails to comply with all applicable laws and regulations;

c. Failing to honor the express warranty by refusing to properly repair or replace the defective flooring.

85. Defendant's breach of its express warranties deprived Plaintiff and the Class Members of the benefits of their bargains.

86. As a direct and proximate result of Lumber Liquidators' breaches of its written warranties, Plaintiffs and the other Class members sustained pecuniary damages in amounts to be determined at trial. As a result of Defendant's conduct Plaintiff and the other Class members sustained damages, and are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

**COUNT VII**

**DECLARATORY RELIEF**

87. Plaintiff, individually and on behalf of all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

88. Defendant has acted or has refused to act on grounds that apply generally to the

Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

89. Plaintiffs seeks entry of an Order entered by this Court ruling that:

a. The Flooring has a defect which results in unsafe levels of formaldehyde emissions, and the defect may not be detectable until after the expiration of any warranty provided by Lumber Liquidators;

b. The Flooring has a defect in workmanship and material that allows for unsafe levels of formaldehyde emissions, and the defect may not be detectable until after the expiration of any warranty provided by Lumber Liquidators;

c. All persons who own structures containing the Flooring should be provided the best practicable notice of the defect, which cost shall be borne by Lumber Liquidators;

d. Certain provisions of Lumber Liquidators' warranty are void as unconscionable;

e. Lumber Liquidators shall re-audit and reassess all prior warranty claims of unsafe formaldehyde emissions, including claims previously denied in whole or in part, where the denial was based on warranty or on other grounds, paying the full cost of repairs and damages; and,

f. Lumber Liquidators shall establish an inspection program and protocol, under Court supervision, to be communicated to Class Members, which will require Lumber Liquidators to inspect, upon request, a Class Member's structure to determine if formaldehyde emissions levels are safe.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), and (b)(3), and certifying the Class defined herein;

B.      Designating Plaintiff as a representative of the Class and his counsel as Class counsel;

C.      Entering judgment in favor of Plaintiff and the Class and against Defendants;

D.      Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.      Imposing a constructive trust on amounts wrongfully collected from Plaintiff and the Class members pending resolution of their claims herein;

F.      Compelling Defendants to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse customers who have had to pay to repair and/or replace defective Flooring; and,

G.      Granting such further relief as the Court deems just.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


DATED: March 11, 2015

Respectfully submitted,

/s/ Robert A. Clifford
Robert A. Clifford
rac@cliffordlaw.com
ID 0461849
Shannon M. McNulty
smm@cliffordlaw.com
ID 6281984
CLIFFORD LAW OFFICES
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602
T: 312-899-9090

*Counsel for Plaintiff*